2009 ND 198

**Larry SAMPLE, d/b/a Sample Auto Sales, Petitioner and Appellant**

v.

**NORTH DAKOTA DEPARTMENT OF TRANSPORTATION, Respondent and Appellee.**

**No. 20090106.**

Supreme Court of North Dakota.

Dec. 2, 2009.

Michael J. Geiermann, Bismarck, ND, for petitioner and appellant.

Michael T. Pitcher, Assistant Attorney General, Bismarck, ND, for respondent and appellee.

MARING, Justice.

[¶ 1] Larry Sample, doing business as Sample Auto Sales, appeals a district court's judgment affirming the Department of Transportation's order suspending his motor vehicle dealer's license for three days. We affirm the district court's judgment.

I

[¶ 2] On September 15, 2007, Sample sold a 1999 Dodge pickup to a customer. Sample issued a "Notary Public or Dealer Certificate of License Application" to the customer. According to Sample, the customer promised to return the following day to pay for the vehicle, but she did not return until the following spring.

[¶ 3] On March 12, 2008; a North Dakota Highway Patrol Officer stopped the customer's husband in the pickup for speeding. When the officer approached the vehicle, he noticed the pickup had a notary sticker that was more than thirty days old and no license plates. The officer ran a registration search and discovered

the title was in a third party's name. The officer did not issue any citations, but reported this discrepancy to the North Dakota Department of Transportation. After the stop, the customer returned to Sample's dealership and made arrangements with Sample to finance and license the vehicle. On March 25, 2008, the Department received the application and remittance fee for the pickup, and it was transferred into the customer's name.

[¶ 4] On May 27, 2008, the Department sent Sample a notice of opportunity to respond for violating N.D.C.C. § 39–04–17. Sample sent a letter to the Department explaining he had been looking for the vehicle since it was sold, the customer brought the vehicle back, a finance contract was signed, and the vehicle was licensed with a delivery date of September 2007. On June 16, 2008, the Department notified Sample it intended to suspend his dealer's license under the applicable provisions of N.D.C.C. ch. 39–22 for violating N.D.C.C. § 39–04–17. Sample requested a hearing that was held on September 4, 2008. The administrative law judge ("ALJ") issued recommended findings of fact, conclusions of law, and order suspending Sample's dealer's license for three days. The Department adopted the ALJ's decision and issued an order suspending Sample's dealer's license for three days. Sample appealed the order to the district court. On March 10, 2009, the district court entered a judgment affirming the Department's order. Sample appeals from the district court's judgment.

## II

[¶ 5] On appeal, "we review the agency's decision and record compiled before the agency while giving respect to sound reasoning of the district court." *People to Save the Sheyenne River v. N.D. Dep't of Health,* 2005 ND 104, ¶ 15, 697

N.W.2d 319. Section 28–32–49, N.D.C.C., provides this Court with authority to review the order of the agency in the same manner provided by N.D.C.C. § 28–32–46. This Court must affirm the Department's order unless one of the eight statutory factors is present under N.D.C.C. § 28–32–46:

1. The order is not in accordance with the law.

2. The order is in violation of the constitutional rights of the appellant.

3. The provisions of this chapter have not been complied with in the proceedings before the agency.

4. The rules or procedure of the agency have not afforded the appellant a fair hearing.

5. The findings of fact made by the agency are not supported by a preponderance of the evidence.

6. The conclusions of law and order of the agency are not supported by its findings of fact.

7. The findings of fact made by the agency do not sufficiently address the evidence presented to the agency by the appellant.

8. The conclusions of law and order of the agency do not sufficiently explain the agency's rationale for not adopting any contrary recommendations by a hearing officer or an administrative law judge.

In determining whether an agency's findings of fact are supported by a preponderance of the evidence, this Court does not make independent findings of fact or substitute its judgment for that of the agency; rather, it determines only whether a reasoning mind could have reasonably determined the agency's factual conclusions were supported by the weight of the evidence. *Hendrickson v. Olson,* 2009 ND 16, ¶ 8, 760 N.W.2d 116 (citing *Power Fu-*

*els, Inc. v. Elkin*, 283 N.W.2d 214, 220 (1979)). "Questions of law, including the interpretation of a statute, are fully reviewable on appeal from an administrative decision." *Gray v. N.D. Game and Fish Dep't*, 2005 ND 204, ¶ 7, 706 N.W.2d 614.

## III

[¶ 6] Sample argues the Department's order to suspend his dealer's license was not in accordance with the law because the Department does not have the statutory authority under N.D.C.C. § 39–22–04 to suspend his dealer's license for a violation under N.D.C.C. § 39–04–17. Words in a statute are given their plain, ordinary, and commonly understood meaning, unless defined by statute or unless a contrary intention plainly appears. N.D.C.C. § 1–02–02. "The language of the statute must be interpreted in context and according to the rules of grammar, giving meaning and effect to every word, phrase, and sentence." *Walberg v. Walberg*, 2008 ND 92, ¶ 9, 748 N.W.2d 702 (citing N.D.C.C. §§ 1–02–03 and 1–02–38(2)). If the language of the statute is clear and unambiguous, the letter of the statute is not to be disregarded under the pretext of pursuing its spirit. N.D.C.C. § 1–02–05. "We will harmonize statutes if possible to avoid conflicts between them, and our statutory interpretation must be consistent with legislative intent and done in a manner to further the policy goals and objectives of the statutes." *Indus. Contractors, Inc. v. Workforce Safety and Ins.*, 2009 ND 157, ¶ 11, 772 N.W.2d 582 (citation omitted).

Section 39–04–17, N.D.C.C., provides:

The possession of a certificate made out by a notary public or an authorized agent of a licensed vehicle dealer who took the acknowledgment of the application when the vehicle was first registered or required to be registered under the laws of this state, if such certificate shows the date of application, the make, registered weight, and year model of the motor vehicle, the manufacturer's number of the motor vehicle which such application describes, and further shows that such notary public, or authorized agent of a vehicle dealer, personally mailed the application with the remittance fee, is prima facie evidence of compliance with motor vehicle law with reference to the vehicle therein described, for a period of thirty days from the date of such application. *Any violation of this section is an infraction punishable by a fine of not less than fifty dollars.* (Emphasis added.) [1]

Section 39–22–04, N.D.C.C., provides:

The director may deny an application for a dealer's license or suspend, revoke, or cancel a dealer's license after it has been granted for making any material misstatement by an applicant in the application for the license; willfully failing to comply with the provisions of this chapter or with any rule adopted by the director; knowingly permitting any person to sell or exchange, or offer or attempt to sell or exchange any motor vehicle except for the licensed motor vehicle dealer by whom the person is employed; *willfully violating a law relating to the sale,* distribution, or financing of motor vehicles; having ceased to have an established place of business; or having violated any state or federal law relating to alteration of odometers or vehicle identification number. (Emphasis added.)

Sample contends N.D.C.C. §§ 39–04–17 and 39–22–04 conflict because both contain penalty provisions. We conclude the provisions do not conflict and may be harmonized.

[¶ 7] Under the plain language of N.D.C.C. § 39–22–04, the Department has authority to suspend a motor vehicle dealer's license for willfully violating a law relating to the sale of a motor vehicle. Sample argues N.D.C.C. § 39–04–17 is a registration statute that does not relate to the sale, distribution, or financing of motor vehicles. Under N.D.C.C. § 39–04–17, the possession of a certificate made out by a notary public or an authorized agent of a licensed vehicle dealer is prima facie evidence that a notary public or dealer agent personally mailed the application with a fee and has complied with the law. Testimony at the administrative hearing indicates that a dealer issues a dealer certificate of license application at the time of the sale of a vehicle. Generally, a vehicle cannot be operated on public highways without being registered to the owner, and having numbered license plates and current registration tabs displayed. *See* N.D.C.C. §§ 39–04–02 and 39–04–11. At the time of the sale of a vehicle, the license plates must be removed and the new owner must apply for and obtain a new registration for the vehicle. N.D.C.C. § 39–04–36. It is the display of the certificate that is prima facie evidence of compliance with the motor vehicle law for thirty days. N.D.C.C. § 39–04–17. We conclude that N.D.C.C. § 39–04–17 is a law relating to the sale of motor vehicles. Therefore, a violation of N.D.C.C. § 39–04–17 is subject to the penalties under N.D.C.C. § 39–22–04, and the Department has authority to suspend a dealer's license. The ALJ did not misapply the law when he concluded that:

> N.D.C.C. section 39–22–04 authorizes the [Department] to suspend a dealer's license for willfully violating a law relating to the sale, distribution, or financing of motor vehicles. N.D.C.C. section 39–04–17 is a law relating to the sale of motor vehicles. The [Department] has the authority to suspend Sample's dealer license for a violation of N.D.C.C. section 39–04–17 proven at the hearing.

[¶ 8] In addition, the legislative history of N.D.C.C. § 39–04–17 supports the harmonizing of these statutes. In 1983, the Legislative Assembly revised N.D.C.C. § 39–04–17. The former statute provided:

> The possession of a certificate made out by the notary public who took the acknowledgment of the application when the vehicle was first registered or required to be registered under the laws of this state, where such certificate shows the date of application, the make and model of the motor vehicle, the manufacturer's number of the motor vehicle which such application describes, and further shows that such notary public personally mailed the application with the remittance fee, shall be prima facie evidence of compliance with motor vehicle law with reference to the motor vehicle therein described, for a period of thirty days from the date of such application. *Any violation of the requirements of this section shall constitute grounds for the suspension of the dealer's license,* however, no such suspension shall be ordered upon a first violation. Intent shall not be a requisite for showing the violation. (Emphasis added.)

N.D.C.C. § 39–04–17 (1972). In 1983, the legislature amended N.D.C.C. § 39–04–17 to authorize agents, who are not notaries, to sign certificates of license application. 1983 N.D. Sess. Laws ch. 424, § 1. The legislature also removed the penalty of suspension of the dealer's license and included language regarding a fine for viola-

tion of the section. 1983 N.D. Sess. Laws ch. 424, § 1.

[¶ 9]   At a hearing on S.B. 2132, members of the legislature questioned whether the Department would still have authority to suspend a motor vehicle dealer's license if the suspension language was removed. Lyle Paulson, Dealer Representative of the North Dakota Motor Vehicle Department, testified that he believed the law pertaining to motor vehicle dealerships would still allow the Department to suspend a dealer's license. *Hearing on S.B. 2132 Before the House Transportation Comm.*, 48th N.D. Legis. Sess. (Feb. 11, 1983) (testimony of Lyle Paulson, Dealer Representative for the North Dakota Motor Vehicle Department) [*"Hearing on S.B. 2132"*]. Legislative history also indicates that "Theron Strinden read from section 39–2[2]–04 [2] of the Code regarding suspension being covered under the dealer registration law." *Hearing on S.B. 2132, supra* (testimony of Theron Strinden, Motor Vehicle Registrar). Moreover, written testimony from Lyle Paulson indicates that the new penalty was included to provide the Department with authority to fine non-dealers because the previous penalty provision only covered licensed motor vehicle dealers. *Hearing on S.B. 2132, supra* (written testimony of Lyle Paulson, Dealer Representative for the North Dakota Motor Vehicle Department). The legislative history indicates that the legislature understood that the Department had authority to suspend a dealer's license under N.D.C.C. § 39–22–04 for violating N.D.C.C. § 39–04–17. Thus, we conclude the statutes can be harmonized.

[¶ 10]   Sample also argues that the Department failed to notify him that he had violated N.D.C.C. § 39–22–04 in addition to N.D.C.C. § 39–04–17. "Due pro-cess nevertheless requires notice and an opportunity for a hearing appropriate to the case." *Schaaf v. N.D. Dep't of Transp.*, 2009 ND 145, ¶ 23, 771 N.W.2d 237. Here, the Department notified Sample that he violated N.D.C.C. § 39–04–17 and that it was suspending his motor vehicle dealer's license for three days under N.D.C.C. ch. 39–22. Sample requested and was granted a hearing. Thus, Sample received adequate notification of the statute the Department claimed he violated and the penalty it sought for the violation.

## IV

[¶ 11]   Sample argues the Department does not possess the authority to consider past suspensions when calculating a new suspension because N.D.C.C. § 39–22–04 does not explicitly provide it. "[I]f the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute, that is whether the agency's construction is rational and consistent with the statute." *Delorme v. N.D. Dep't of Human Servs.*, 492 N.W.2d 585, 588 (N.D.1992) (citations omitted). In addition, "leaving the manner and means of exercising an administrative agency's powers to the discretion of the agency implies a range of reasonableness within which the agency's exercise of discretion will not be interfered with by the judiciary." *State v. Hagerty*, 1998 ND 122, ¶ 26, 580 N.W.2d 139. Section 39–22–04, N.D.C.C., provides the Department authority to suspend a dealer's license, but does not provide any guidelines for calculating the length of suspensions. The Department argues it therefore has the authority to determine the length of suspensions. The ALJ stat-

---

**2.**  The section cited in the history is N.D.C.C. § 39–24–04. However, N.D.C.C. § 39–24–04 applies to the registration of snowmobiles. We assume this is a typographical error.

ed "another three day suspension for this second violation is certainly appropriate for this second violation of N.D.C.C. Title 39, relating to the sale of motor vehicles." The Department's construction is reasonable and within its discretion. Therefore, this Court holds that it was not improper for the Department to consider past suspensions when calculating the length of Sample's suspension.

## V

[¶ 12] Sample argues the ALJ's finding that he willfully violated N.D.C.C. § 39–04–17 was not supported by the evidence. Black's Law Dictionary defines "willful" as "[v]oluntary and intentional, but not necessarily malicious." *Black's Law Dictionary* 1630 (8th ed. 2004). Whether an individual has "willfully violated" a legal duty is a factual determination. *See, e.g., Hausauer v. N.D. Workers Comp. Bur.*, 1997 ND 243, ¶ 19, 572 N.W.2d 426 (concluding the agency reasonably reached a factual conclusion that Hausauer willfully made false statements). We only determine whether a reasoning mind could have reasonably determined the agency's factual conclusions were supported by the weight of the evidence. *Hendrickson*, 2009 ND 16, ¶ 8, 760 N.W.2d 116. The ALJ determined:

> Sample willingly issued the Certificate; he willingly did not mail in the application for registration or the remittance fee for the [customer's] vehicle. He chose this course of action. That he may have been mistaken as to the result of his actions in that he chose to believe that he had no further obligation or responsibility with regard to issuing the

certificate because [the customer] had not paid him in cash the next day as promised does not mean that Sample[']s course of action was not willful.

The ALJ's findings include that Sample either made a sale or acted as if he made a sale on September 15, 2007, he issued a certificate, and he had a legal duty to remit the application and remittance fee. Based on our review of the record, we conclude a reasoning mind could have reasonably determined that Sample willfully violated N.D.C.C. § 39–04–17.

## VI

[¶ 13] We conclude the Department had authority under N.D.C.C. § 39–22–04 to suspend Sample's motor vehicle dealer's license for willfully violating N.D.C.C. § 39–04–17, it had the authority to consider past suspensions, and the ALJ's finding that Sample willfully violated N.D.C.C. § 39–04–17 is supported by the evidence. We affirm the district court's judgment.

[¶ 14] GERALD W. VANDE WALLE, C.J., CAROL RONNING KAPSNER, J., DANIEL D. NARUM, D.J., and BRUCE E. BOHLMAN, S.J., concur.

[¶ 15] The Honorable BRUCE E. BOHLMAN, S.J., and the Honorable DANIEL D. NARUM, D.J., sitting in place of SANDSTROM, J., and CROTHERS, J., disqualified.